**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| CHAMBERS OF | 6500 Cherrywood Lane |
| TIMOTHY J. SULLIVAN | Greenbelt, Maryland 20770 |
| UNITED STATES MAGISTRATE JUDGE | Telephone: (301) 344-3593 |

February 9, 2022

LETTER TO COUNSEL:

      RE:   *Shuronn S. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
              Civil No. TJS-20-3756

Dear Counsel:

      On December 28, 2020, Plaintiff Shuronn S. petitioned this Court to review the Social Security Administration's final decision to deny his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 12 & 15. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Acting Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

      Shuronn S. protectively filed his applications for DIB and SSI on May 30, 2017. Tr. 28. He alleged a disability onset date of January 15, 2017. *Id.* His applications were denied initially and upon reconsideration. *Id.* Shuronn S. requested an administrative hearing, and a hearing was held on February 6, 2020, before an Administrative Law Judge ("ALJ"). Tr. 44-67. In a written decision dated April 3, 2020, the ALJ found that Shuronn S. was not disabled under the Social Security Act. Tr. 25-43. The Appeals Council denied Shuronn S.'s request for review, making the ALJ's decision the final, reviewable decision of the agency. Tr. 12-19.

      The ALJ evaluated Shuronn S.'s claims for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. At step one, the ALJ found that Shuronn S. had not engaged in substantial gainful activity since January 15, 2017, the alleged onset date. Tr. 31. At step two, the ALJ found that Shuronn S. suffered from the following severe impairments: status/post traumatic brain injury with residual headaches and behavioral and cognitive disorder. *Id.* At step three, the ALJ found Shuronn S.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). Tr. 31-32. The ALJ determined that Shuronn

---

[1] This case was originally assigned to Judge Boardman. On June 30, 2021, it was reassigned to Judge Coulson. On January 31, 2022, it was reassigned to me.

S. retained the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: he can do simple work, without fast pace or strict production quotas, with only occasional interaction with co-workers and supervisors and none with the general public, and with only simple changes in routine." Tr. 32.

At step four, the ALJ determined that Shuronn S. was unable to perform past relevant work. Tr. 35-36. At step five, relying on testimony provided by a vocational expert ("VE"), and considering the claimant's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Shuronn S. can perform, including laundry worker, hand packager, and marker. Tr. 36-37. Accordingly, the ALJ found that Shuronn S. was not disabled under the Social Security Act. Tr. 37-38.

Shuronn S. argues that this case must be remanded for further proceedings because (1) the ALJ did not explain how the ALJ found that he could perform simple work without fast pace or strict production quotas and did not explain what he meant by "fast pace" or "strict production quotas"; (2) the ALJ did not provide a narrative discussion that explained how the evidence supported the ALJ's conclusions; (3) the ALJ did not evaluate pertinent evidence; and (4) the ALJ did not properly evaluate his subjective complaints. ECF No. 12-1 at 3-16. For the reasons discussed below, however, these arguments are without merit.

Shuronn S. first contends that remand is warranted because the ALJ did not define the term "fast pace or strict production quotas" used in the RFC assessment. ECF No. 12-1 at 5-8 (citing *Thomas v. Berryhill*, 916 F.3d 307, 312-13 (4th Cir. 2019)). "In *Thomas*, the Fourth Circuit held an ALJ's RFC assessment limiting the plaintiff to work not 'requiring a production rate or demand pace' frustrated review because the Court lacked 'enough information to understand what those terms mean[t].'" *Kenneth L. v. Kijakazi*, Civil No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (Gallagher, J.) (alteration in original) (quoting *Thomas*, 916 F.3d at 312). By contrast, "'no strict production quotas' contains terms that are subject to common understanding." *Id.* "Unlike the term in *Thomas*, which required the Court to determine what pace or rate was required in 'demand' or 'production' occupations, here the ALJ determined that [Shuronn S.] could not work in occupations with 'strict production quotas.'" *Id.* (citing *Thomas*, 916 F.3d at 312). "The term in this case plainly relates to the rigidity of the occupations' production requirements— whatever those requirements may be." *Id.* Thus, "the inclusion of this term in the ALJ's RFC determination does not frustrate appellate review." *Id.*

Shuronn S. argues, however, that the ALJ did not adequately explain the evidence upon which the ALJ relied to determine that he could perform simple work without fast pace or strict production quotas. ECF No. 12-1 at 5. But this limitation addresses Shuronn S.'s moderate limitation in concentrating, persisting, or maintaining pace (Tr. 32) under *Mascio*, 780 F.3d at 638. *See Kenneth L.*, 2021 WL 4198408, at *2. The ALJ also found "the opinions from the State agency medical and psychological consultants most persuasive, as their functional assessment was internally consistent and supported by the medical record" (Tr. 35). *See* 20 C.F.R. §§ 404.1520c, 416.920c. The state agency consultants opined that Shuronn S. "is able to maintain attention and concentration for the time required for the performance of simple tasks." Tr. 78, 92, 111, 127. The ALJ found that their opinions or administrative medical findings "were well-supported by their references to the medical evidence, particularly references to treating source findings. Moreover,

these opinions were consistent with findings and observations in other medical evidence." Tr. 35. "Thus, the ALJ explained his reasoning with respect to the RFC determination and cited to substantial evidence that supported his conclusion. The ALJ's decision contains the 'accurate and logical bridge' required between the evidence and the ALJ's conclusion." *Kenneth L.*, 2021 WL 4198408, at *2 (citing *Monroe v. Colvin*, 826 F.3d 176, 190 (4th Cir. 2016)). Shuronn S.'s argument on this point is thus also without merit.

Shuronn S. then argues that the ALJ failed to provide a narrative discussion stating how the evidence of record supported each conclusion. ECF No. 12-1 at 8-10. Every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing the evidence that supports it. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). An ALJ must consider all of a claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Thomas*, 916 F.3d at 311 (alteration in original) (quoting *Monroe*, 826 F.3d at 188). In doing so, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC. *Id.*; *Thomas*, 916 F.3d at 311 ("Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."). ALJs need not mention every piece of evidence, so long as they build a logical bridge from the evidence to their conclusions. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

The ALJ's decision contains a detailed discussion of the evidence of record, including Shuronn S.'s subjective reports of his condition over time, his reported daily activities, treatment notes containing observations of his condition over time, the results of consultative examinations, and medical opinions. Tr. 33-35. In addition to summarizing the evidence and explaining the weight that the ALJ assigned to it, the ALJ also explained how the evidence translated into the ALJ's RFC determination. *Id.* Contrary to Shuronn S.'s argument, the ALJ's explanation is sufficient for this Court to conduct its review. Because the ALJ explained how he weighed and considered the evidence, and because substantial evidence supports the ALJ's findings, Shuronn S.'s argument on this point is without merit.

Further, in assessing RFC, the ALJ must discuss a claimant's "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)" and must "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 1996 WL 374184, at *7. In connection with the ALJ's detailed discussion of the evidence, and after citing the relevant regulations and policy interpretation ruling, *see* Tr. 30, the ALJ determined the work activities that Shuronn S. can perform on a full-time basis. Substantial evidence thus supports the ALJ's RFC determination.

Shuronn S. next maintains that the Court must remand this case because the ALJ did not incorporate in the RFC assessment the state agency consultants' opinions that he was able to understand and remember only "short and simple instructions." ECF No. 12-1 at 10 (citing Tr. 78, 92, 111, 127). The VE testified that an individual limited to, among other things, simple work without fast pace or strict production quotas and with only simple changes in routine could perform

the occupations of "laundry worker," "hand packer," and "marker." Tr. 64-65. According to the *Dictionary of Occupational Titles* (the "DOT"), these jobs involve a DOT reasoning level of two. *See* DOT 361.684-014, 1991 WL 672983 (listed as "laundry worker I"); DOT 920.587-018, 1991 WL 687916 (listed as "packager, hand"); DOT 209.587-034, 1991 WL 671802 (listed as "marker"). Appendix C of the DOT, 1991 WL 688702, defines level-two reasoning skills as the skills to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." Level-one reasoning, by contrast, involves the skills to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT app. C, 1991 WL 688702. A limitation to "short, simple instructions" apparently conflicts with a need to carry out detailed but uninvolved instructions as found in jobs requiring level-two reasoning. *Thomas*, 916 F.3d at 313-14. A limitation to "simple instructions," on the other hand, is compatible with jobs involving level-two reasoning. *Marvin J. v. Kijakazi*, No. 2:20CV356, 2021 WL 3719274, at *16 (E.D. Va. July 30, 2021) (citing, *inter alia*, *Lawrence v. Saul*, 941 F.3d 140, 143-44 (4th Cir. 2019)), *report and recommendation adopted*, No. 2:20-CV-356, 2021 WL 3711179 (E.D. Va. Aug. 20, 2021); *accord Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1322-24 (11th Cir. 2021).

Shuronn S. asserts that, because the state agency consultants found that he was able to understand and remember only "short and simple instructions," he "is only capable of performing occupations with a Reasoning level of 1. As all of the occupations identified by the [VE] require a Reasoning level of 2, each is outside the range of work that [he] is capable of performing." ECF No. 12-1 at 11. He thus contends that the ALJ's "determination that [he] is capable of performing the occupations of laundry folder, hand packager, and marker, at step five of the sequential evaluation process, fails to be supported by substantial evidence." *Id.*

Shuronn S.'s arguments are unavailing because they ignore the state agency consultants' other administrative medical finding that, despite Shuronn S.'s moderate limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, he retained "the ability to carry out *simple instructions*" and was "able to maintain attention and concentration for the time required for the performance of simple tasks." Tr. 78, 92, 111, 127 (emphasis added). The consultants ultimately opined that Shuronn S. retained the mental RFC to "understand, retain, and carry out *simple instructions*" (Tr. 79, 93, 112, 128 (emphasis added)), which, as explained above, is compatible with occupations involving level-two reasoning. *Buckwalter*, 5 F.4th at 1322-24; *Lawrence*, 941 F.3d at 143-44. Substantial evidence thus supports the ALJ's finding at step five that he can perform the occupations of laundry worker, hand packager, and marker.

Shuronn S. also contends that, in performing the psychiatric review technique and in assessing his RFC, the ALJ ignored his IQ scores achieved during a November 2017 consultative examination. ECF No. 12-1 at 11-12. The state agency consultants, however, considered these IQ scores in their administrative medical findings that "the impairment does not impose more than moderate limitations" (Tr. 76, 90, 109, 125), so Shuronn S.'s argument that remand is warranted on this basis is also without merit. *See Bryant v. Colvin*, 571 F. App'x 186, 190 (4th Cir. 2014)

4

(per curiam) (finding harmless error in ALJ's failure to discuss consultative examiner's report because report was discussed by state agency consultants, whose opinions were given "great weight" by ALJ, and was consistent with medical evidence on record).

Last, Shuronn S. argues that the ALJ did not properly evaluate his subjective complaints. ECF No. 12-1 at 12-16. In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. *Id.* §§ 404.1529(c), 416.929(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id.* To evaluate a claimant's statements, ALJs must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020). In other cases, the ALJ may consider that objective evidence, or lack thereof, in conjunction with other evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c). In any case, the ALJ may not rely solely on the lack of objective medical evidence to discredit a claimant's subjective statements. *Id.* Claimants are entitled to rely exclusively on subjective evidence to prove the degree to which their symptoms affect their ability to work at the second step of the analysis. *Arakas*, 983 F.3d at 95-97.

Here, the ALJ's written decision presents a detailed statement of Shuronn S.'s subjective complaints. The ALJ first found that Shuronn S.'s severe impairments could reasonably be expected to produce his alleged symptoms. Tr. 33. The ALJ then proceeded to consider Shuronn S.'s allegations in concert with the other evidence in the record, including Shuronn S.'s statements about his symptoms over time, the extent of his daily activities, his work history, and the objective evidence in the record. Tr. 33-35. In considering the totality of the evidence, the ALJ explained his finding that Shuronn S.'s statements about the severity of his symptoms could not be completely reconciled with other persuasive evidence. Weighing all of the evidence, the ALJ found that Shuronn S.'s impairments are not disabling and that he can perform work with the limitations contained in the RFC. Substantial evidence supports the ALJ's decision in this regard.

Shuronn S.'s disagreement with the ALJ's consideration of the evidence essentially amounts to an argument that the Court should evaluate the evidence in the record de novo. But the Court's review is confined to whether substantial evidence supports the ALJ's decision and whether the correct legal standards were applied. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The Court is not permitted to reweigh the evidence, even if the Court believes the ALJ could have reached a different conclusion. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's decision complies with the governing legal standards and is supported by substantial evidence. Accordingly, Shuronn S.'s argument to the contrary is unavailing.

For the reasons set forth above, Shuronn S.'s Motion for Summary Judgment (ECF No. 12) will be **DENIED**, and the Acting Commissioner's Motion for Summary Judgment (ECF No. 15) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                Sincerely yours,

                /s/

                Timothy J. Sullivan
                United States Magistrate Judge